## CRAIK v. UNITED STATES.
### No. M–79.

Court of Claims.
Feb. 5, 1940.

Richard S. Holmes, of New York City, for plaintiff.

John W. Hussey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, Sp. Assts. to Atty. Gen., on the brief), for defendant.

Before WHALEY, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHITAKER, Judges.

WHITAKER, Judge.

The plaintiff during the time in question was a nonresident alien. He was a member of two partnerships operating in this country. Both of these partnerships derived a portion of their income from sources without the United States. The plaintiff, being a nonresident alien, claims the right to exclude from his income his distributive share of the partnership income derived from sources without the United States, under section 213(c) of the Revenue Act of 1918, 40 Stat. 1066, which reads in part as follows: "In the case of nonresident alien individuals, gross income includes only the gross income from sources within the United States, * *" and a similar provision of the Revenue Act of 1916, section 1(a), 39 Stat. 756.

The provisions of the Revenue Act of 1916, as amended, and of the Act of 1918 applicable here are substantially the same. Section 218(a) of the Revenue Act of 1918, 40 Stat. 1070, provides: "That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity." It then provides that each partner, in computing his net income, shall include "his distributive share, whether distributed or not, of the net income of the partnership * * *."

In subsection (d) the method of computing the net income of the partnership is prescribed. It is provided that it "shall be computed in the same manner and on the same basis as provided in section 212, except that the deduction provided in paragraph (11) of subdivision (a) of section 214 shall not be allowed." The paragraph referred to is that permitting deductions for charitable and similar contributions.

Since the partnership in computing its net income was required to include, as was an individual, dividends received from corporations and interest on United States obligations, and since an individual in computing his income subject to normal tax was entitled to deduct such items, it was provided that a partner might deduct from his income his proportionate share of such interest and dividends received by the partnership.

An examination of the various income tax Acts, beginning with the first one of 1913, shows that Congress in the enactment of each of them intended to treat partnership income as though the distributive share of each partner therein had been received directly by the partner. Each one of the Acts contains the statement that "individuals carrying on business in partnership shall be liable for income tax only in their individual capacity," and each one of them allows the partner the same credit against partnership income

to which he was entitled against his individual income.

The 1913 Act did not in terms allow the credits allowed by the 1918 Act. This, undoubtedly, was because Congress had the common-law view of a partnership and, therefore, did not think it necessary to enact such an express provision, assuming that it would be understood that the income of the partnership was intended to be treated as that of the individual partners.

In the enactment of the Revenue Act of 1916, 39 Stat. 756, however, Congress made express provision for the exclusion from the individual partner's income of that part of his proportionate share of the partnership income which would have been excluded had the income been received by him individually, such as interest on United States obligations, or those of a State or political subdivision thereof, taxes paid to the United States, or to any State or political subdivision, and their proportionate share of dividends received by the partnership; thus more fully expressing its intent that the partnership should not be treated as a separate entity, but that income received by it should be treated as income received by the individual partner.

A different method for the handling of partnership income was provided for in the 1918 Act, 40 Stat. 1070. By that Act rules were laid down for the computation of the partnership income, whereas none had been in either the 1913 or 1916 Acts. A partnership was required to compute its income as did an individual, but in order to treat the partner's distributive share thereof on the same basis as his individual income, the credit for his proportionate share of dividends and interest on United States obligations was expressly allowed him. This indicates to us again that Congress intended to treat partnership income as income received by the individual partners.

The 1921, 1924 and 1926 Acts contained the same provisions as the 1918 Act.

The 1928 Act allowed an individual credit for earned income and allowed him to compute capital net gains and losses on a basis different from ordinary gains and losses. So, continuing its policy of treating a partner's distributive share of partnership income on the same basis as income received by him individually, it was provided that a partner should be entitled to credit for his proper part of the partnership's earned income, and that his

proper part of the partnership's capital net gains and losses and of its ordinary net income should be taxable to him as though they had been received by him directly. The partner was also permitted to deduct his proportionate share of the net loss of the partnership and his proportionate share of income, war-profits, and excess-profits taxes paid foreign countries. The 1932 Act was to the same effect.

Only in one respect might it be said that Congress had evinced a purpose not to treat partnership income as income received by the individual partners. That is, that partnerships in computing their income were not entitled to deduct charitable contributions; whereas individuals were. But the Bureau of Internal Revenue held, after this restriction had been placed on partnerships in the 1918 Act, that the respective partners were entitled to the deduction in computing their individual income. O.D. 185, 1 C.B. 151. After this ruling was made Congress enacted the 1921, 1924, 1926, 1928, and 1932 Acts and made no change in the law, thus evidencing its approval of this ruling, and thus further evidencing its intention that a partner's distributive share should be treated as though it had been received by him individually.

In the 1934 and 1936 Acts the prohibition against the deduction of charitable contributions in computing the income of partnerships was eliminated. The 1938 Act prohibited the deduction to the partnership, but permitted the partners to deduct their proportionate share, going back to the practice established when the 1918 Act was passed.

The treatment of partnership income on the same basis as though it had been received by the partner directly is consistent with the common-law idea of a partnership. At common law, the personal property of the partnership was held not by the partnership, but by the partners in common. Real estate was held by an individual for the benefit of the partnership, because a partnership was not an entity and, therefore, could not hold the title. Each partner was liable for the debts of the partnership on the theory that they were the partners' debts and not the debts of the partnership. Each partner was the agent for the other partners in the carrying out of their common purpose. The income earned by the partnership was

regarded as having been earned by each of the individual partners, either by himself individually or through his agents, the other partners.

The Bureau of Internal Revenue has so treated partnership income for twenty years. Originally it promulgated a regulation providing that partnership income could not be traced to its source behind the partnership for the purpose of claiming individual exemption. This ruling, however, was questioned and presented to the District Court for the Northern District of Ohio. On June 26, 1918, the court rendered an opinion holding that the Revenue Acts treat a partnership's " * * * profits and its earnings as those of the individual taxpayer. * * * The Congress, consequently, it would seem ignored, for taxing purposes, a partnership's existence, and placed the individual partner's share in its gains and profits on the same footing as if his income had been received directly by him without the intervention of a partnership name." United States v. Coulby, D. C., 251 F. 982, 984. This case was affirmed on appeal. United States v. Coulby, 6 Cir., 258 F. 27.

It is admitted that since this time partnership income has been so treated by the Bureau. In the light of this administrative practice Congress has continued to enact substantially the same provisions for the treatment of partnership income.

The defendant, however, presses upon us the decision of the Second Circuit Court of Appeals in Johnston v. Commissioner of Internal Revenue, 86 F.2d 732, Circuit Judge Swan dissenting. In that case the majority of the court held that a partner was not permitted to offset his noncapital net loss against his proportionate share of the partnership net gain. The Court thought that Congress, by providing for certain specific credits against a partner's income on account of his share of partnership profits, thereby impliedly prohibited any other credit. The Court called attention to the fact that the Act expressly provided for taxing the partners on their distributive share of capital net gains as if it had been received by them individually, and thought that its failure to mention noncapital gains and losses indicated that it did not intend that they should be treated similarly. This case was followed by this court in Klingenstein v. United States, 85 Ct.Cl. 164, 18 F.Supp. 1015.

Congress' attention having been given to gains and losses, and. having provided for the treatment of capital gains and losses as if they were the gains and losses of the individual partners, and not having made such provision for noncapital gains and losses, there was room for the conclusion reached in the Johnston case, supra. But we do not think that by the specification of certain items for which the partner might take credit Congress intended to exclude all others, if the exclusion of them would result in the treatment of partnership income in a way different from what it would have been treated had it been received by the partners individually.

It is, of course, within the power of Congress to limit deductions from gross income to any extent it pleases, but our study of the pertinent sections of the 1916 and 1918 Acts and of related sections of other acts persuades us that Congress intended that an individual should have every deduction from partnership income which he might take from his individual income, unless the contrary clearly appears.

However, we are dealing here not with what credits or deductions a partner is entitled to, but what he shall include in his gross income. We are convinced that Congress intended that partnership income should be treated as though it had been received by the partners individually. If we are correct in this, then this plaintiff's proportionate share of the partnership income received from sources without the United States should be treated as though he himself had received this income directly, and not through the conduit of the partnership. If so, in computing his income, his proportionate share of the income from sources without the United States should be excluded.

The defendant further takes the position in its brief that the plaintiff received his income from the partnership, and since the partnership was a "domestic partnership" his income was from sources within the United States, from whatever source the income might have been derived by the partnership. This cannot be true unless the partnership is regarded as a separate entity, and this the Revenue Act does not do. Cf. Dorothy S. Bence v. United States, 84 Ct.Cl. 605, 18 F.Supp. 848.

It results that the plaintiff is entitled to recover the amounts stipulated, to wit:

$2,671.65 with interest at 6 percent from June 15, 1918; $6,508.14 with interest at 6 percent from December 15, 1919; and $2,186.15 with interest at 6 percent from December 15, 1920. It is so ordered.